IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGINALD WRIGHT, et al.,            )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )    CIVIL ACTION NO. 97-C-0776-S
                                    )
CIRCUIT CITY STORES, INC.,          )
                                    )
        Defendant.                  )

FILED

98 NOV 23 PH 3: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

NOV 2 3 1998

## MEMORANDUM OPINION

This matter is before the court on the motion of the law firm of Lehr Middlebrooks Price & Proctor, P.C. (Lehr Middlebrooks) for leave of court to substitute counsel for defendant Circuit City Stores, Inc. (Circuit City), the motion of defendant's current counsel to withdraw, and the motion of attorney David Middlebrooks to join the motion for leave to substitute counsel.   Upon consideration of the record, the submissions of the parties, and the relevant law, the undersigned is of the opinion that the motion of David Middlebrooks to join in the motion for leave of court to substitute counsel is due to be granted, the motion for leave to substitute counsel is due to be denied, and the motion of present counsel to withdraw is due to be granted.

### I. BACKGROUND

#### A. Procedural History

Plaintiff Reginald Wright filed this action on March 28, 1997, alleging claims of race discrimination and deprivation of civil rights under 42 U.S.C. §§ 1981 and 1985(3).

42

Pursuant to the usual assignment procedures of this court, the case was assigned to United States District Judge U. W. Clemon. The complaint and summons were served on defendant Circuit City on July 9, 1997. An amended complaint was filed on July 27, 1997, adding the other named plaintiffs and the class action allegations and naming only Circuit City as a defendant.

Circuit City, represented by Thomas Coleman, Jr., of the law firm of Smith, Spires & Peddy, P.C., filed an answer to the original complaint on July 31, 1997. On September 10, 1997, Circuit City filed an answer to the amended complaint as well as its notice substituting counsel Jere F. White, Jr., and William H. King, III, of the law firm of Lightfoot, Franklin & White, L.L.C. (Lightfoot Franklin) for Thomas Coleman. On September 18, 1997, Anne Sikes Hornsby of the Lightfoot Franklin firm also filed a notice of appearance in this case.

Circuit City filed a Motion to Stay Proceedings and Compel Arbitration on October 27, 1997, concerning certain of the named plaintiffs. The motion was set for argument on the court's November 21, 1997 docket. After continuances were granted to both parties, the motion was finally heard on March 6, 1998. Counsel made arguments, but presented no testimony. The hearing lasted about one hour. A decision has not been rendered on the motion.

According to the parties, discovery has been limited. Plaintiffs served their interrogatories and a request for production of documents in December 1997.

2

Defendants responded in February 1998. Defendants served their interrogatories and request for production in June 1998 and the plaintiffs responded during August and September 1998. One agreed-upon "Stipulated Protective Order" has been entered. No discovery disputes have yet required court intervention.

Terry Price, Brent L. Crumpton, and the Lehr Middlebrooks firm filed a Motion for Leave to Substitute Counsel on September 30, 1998, on behalf of Circuit City. (Doct. 23).[1] Terry Price is a shareholder in the Lehr Middlebrooks firm and the nephew of Judge Clemon. Prior to joining Lehr Middlebrooks, he was with Constangy, Brooks & Smith (Constangy Brooks). The Lightfoot Franklin firm filed a motion to withdraw as counsel for Circuit City on October 2, 1998. (Doct. 26). David Middlebrooks filed a "Motion to Join Motion for Leave to Substitute Counsel" on October 7, 1998. (Doct. 27). The motion to substitute counsel is opposed by the plaintiffs. (Doct. 25).

The court afforded the parties an opportunity to file briefs in support of their respective positions. The court also conducted two hearings on the motions. At the first hearing, conducted October 20, 1998, defendant Circuit City presented the testimony of one witness. At the second hearing, conducted November 16, 1998, the parties presented oral arguments, but no further testimony.

---

[1] References herein to "Doct. ___" are to the pleading numbers assigned by the Clerk of the court.

3

### B. Factual History

After the original complaint was filed in this action, Circuit City, through their Associate General Counsel, Pamela G. Parsons (Ms. Parsons), decided to hire the Birmingham firm of Smith, Spires & Peddy. When the amended complaint, adding five other plaintiffs and class allegations, was filed in July 1997, Circuit City decided to change counsel. (Doct. 36, ¶ 4-5). Ms. Parsons decided to retain Jere White and the Birmingham law firm of Lightfoot Franklin premised on the firm's existing relationship with Circuit City and the firm's capabilities and interest in the representation. (Doct. 36, ¶ 6). According to Parsons, "[o]ver time, various concerns and conflicts regarding the management and staffing of the litigation led to my decision in approximately June 1998 to replace Jere White and Lightfoot Franklin & White as counsel in the case." (Doct. 36, ¶ 7). She informed Stephen Cannon, Senior Vice President, and General Counsel for Circuit City, of her desire to change counsel. He concurred in the decision and authorized her to investigate their options. (Doct. 36, ¶ 8; Doct. 35, ¶ 4).

Premised on "various inquiries, referrals and research," interviews were conducted between June and September 1998 with representatives from four firms: Christopher Mitchell and Carol Sue Nelson at Constangy Brooks in Birmingham; Lawrence Ashe and Geoffrey Weirich at Paul Hastings Janofsky & Walker in Atlanta; John Wymer at Powell Goldstein in Atlanta; and Daniel Shay at Smith Currie & Hancock in Atlanta. (Doct. 36, ¶ 10). In an August telephone call and in a subsequent meeting, Ms. Parsons

4

requested that John Wymer, III, of Powell Goldstein recommend Birmingham firms to represent Circuit City in this dispute. Mr. Wymer named four firms and an attorney in each: David J. Middlebrooks at Lehr Middlebrooks; Jonathan S. Harbuck at The Kullman Law Firm; Steve Brown at Maynard, Cooper & Gale, P.C.; and Ann Yuengert at Bradley, Arant, Rose & White. (Doct. 37, ¶ 3).

During a September 22, 1998 telephone conversation, David Middlebrooks informed Parsons that an attorney in his firm was a relative of Judge Clemon. Parsons states that she was not certain of the consequences of this fact at that time. On September 28, 1998, Parsons and Cannon traveled to Birmingham to interview David Middlebrooks; James Alexander at Bradley, Arant; and William Gardner at Cabaniss, Johnston, Gardner, Dumas & O'Neal in Birmingham. They were accompanied by attorney David Nagle of the LeClair Ryan law firm in Richmond, Virginia. Mr. Nagle is representing Circuit City in other employment-related matters which may have a bearing on the present matter. (Doct. 36, ¶ 14). During the flight to Birmingham, Ms. Parsons informed the General Counsel for Circuit City of the fact that an attorney at Lehr Middlebrooks was related to Judge Clemon. (Doct. 36, ¶ 11; Doct. 29, p. 65).

The meeting at Lehr Middlebrooks was attended by representatives of Circuit City, including Parsons, Cannon, and David Nagle, and members of the Lehr Middlebrooks firm, including David Middlebrooks and Terry Price. During the meeting, Circuit City's counsel specifically were informed that Terry Price was Judge Clemon's

5

nephew and "that in other cases he had been involved in . . . that it was necessary for the judge to recuse himself because of Mr. Price's involvement in the case." (Doct. 29, p. 72). They were also told of the court's standing order concerning the necessity of filing a motion to substitute counsel when the addition or substitution of counsel would require recusal or disqualification of a judge to whom the case is assigned and the Eleventh Circuit Court of Appeals decision in *Robinson v. Boeing*, 79 F.3d 1053 (11th Cir. 1996), addressing the substitution of counsel issue. Parsons was provided with a copy of the standing order and the *Boeing* case before she left the meeting. *Id.*

After the meeting at Lehr Middlebrooks, Circuit City's counsel also talked with James Alexander at Bradley Arant and William Gardner at Cabaniss Johnston. (Doct. 29, pp. 75-76). Counsel flew out of Birmingham the same day. Parsons made the decision to retain Lehr Middlebrooks on the flight back to Virginia before reading the *Boeing* decision. (Doct. 29, pp. 40, 77).

## II. STANDARD OF REVIEW

In 1995, United States District Judge William M. Acker, Jr., documented a list of 15 cases that were filed in this court from January 1, 1993, until June 2, 1995, which were initially assigned to Judge Clemon and in which the Constangy Brooks firm thereafter appeared for a defendant, causing Judge Clemon's recusal. *See Robinson v. Boeing Company,* 79 F.3d 1053, 1056 Appendix (11th Cir. 1996). Judge Acker noted:

> The court has no way of knowing what the incidence of Constangy, Brook (sic) and Smith's being retained by defendants would have been if the

6

above-named cases had been originally assigned to judges other than Judge Clemon, but an intelligent guess is that the incidence would have been less. What, if anything, this court should do about the matter will be for the entire court and not for one judge.

*Id.,* at 1056-57.

In *Robinson v. Boeing,* another case arising in this district, the defendant "sought to associate members of the law firm of Constangy, Brooks & Smith as additional trial counsel [in a discrimination suit pending before Judge Clemon] cognizant of the fact that Judge Clemon's nephew was associated with the firm and the grant of the defendant's motion would most certainly lead to Judge Clemon's recusal pursuant to 28 U.S.C. §§ 455(b)(5)(ii) and/or (iii)."[2] The motion for leave to associate new counsel was assigned to another judge of this court who denied it, finding "that the fact that the case has been pending for fifteen months at the time the motion was filed militates against granting it in the absence of an overriding need for a particular lawyer." *Boeing,* 79 F.3d at 1055.

In reviewing the determination, the Eleventh Circuit Court of Appeals concluded

---

[2] 28 U.S.C. §§ 455(b)(5)(ii) and (iii) provide in pertinent part:

(b) [A judge] shall also disqualify himself in the following circumstances:

. . .

   (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . .

      (ii) Is acting as a lawyer in the proceeding;

      (iii) Is known by the judge to have an interest that could be substantially affected by
         the outcome of the proceeding;

. . . .

7

that "the denial of the motion to add counsel was within the discretion of the trial court, and that it did not abridge any fundamental right to counsel of choice." *Id.* The Court delineated the factors that should be considered in deciding whether to allow the substitution of counsel. These factors include: (1) the fundamental right to counsel, (2) the court's docket, (3) the injury to the plaintiff, (4) the delay in reaching a decision, (5) the judicial time invested, (6) the expense to the parties objecting, and (7) the potential for manipulation or impropriety. *Id.* They are the guideposts for the determination of the present matter.

Shortly after the *Boeing* decision, this Court implemented a new standing order that addresses the present issue. The order provides:

> Effective July 15, 1996, the appearance in any civil case pending in this court by any counsel in addition to, or in substitution of, a previously-appearing counsel for the same party shall, if such appearance would or might constitute grounds for recusal or disqualification of the judge to whom the case is assigned (which did not already exist by reason of the identity of the previously-appearing counsel), be ineffective until such time that a motion, seeking leave to add or substitute new counsel, is approved by a district judge or magistrate judge of this court. Ordinarily, such a motion shall be referred automatically and at random to a magistrate judge of this court for prompt hearing and decision. There shall be a strong, but rebuttable, presumption that the reason for such a proposed addition or substitution of counsel is to cause recusal or disqualification of the assigned judge; and the judge to whom such motion is referred may also consider the disruptive effect, if any, reassignment of the case to another judge would have upon the court and other parties.

Circuit City challenges the court's standing order on several grounds.[3]  Because

---

[3] Specifically, Circuit City asserts, *inter alia*, that the standing order (1) includes a presumption that is inconsistent with the defendant's fundamental right to counsel of its choice; (2)

the court finds that the result in this matter would be the same even in the absence of the standing order, it is unnecessary to address the challenges. In reaching this conclusion, the court notes that the issue of whether Lehr Middlebrooks may represent Circuit City has been aggressively contested by the parties. It is readily apparent that the parties would have contested this issue by whatever procedural tools were available. Thus, if there had been no standing order, it is certain that the plaintiffs would have proceeded by filing a motion to disqualify Lehr Middlebrooks, which would have resulted in an analysis under *Boeing* without any presumption attached. Accordingly, the court will proceed with an analysis consistent with the dictates of *Boeing*.

## III. DISCUSSION

### A. Right to Counsel

The civil litigant's right to counsel is a fundamental right guaranteed by the due process clause of the Fifth Amendment. *Postashnick v. Port City Construction Co.,* 609 F.2d 1101, 1118 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S. Ct. 78, 76 L. Ed. 2d 22 (1980). This does not, however, entail "absolute freedom of choice." *McCuin v. Texas Power Light Co.,* 714 F.2d 1255, 1262 (5th Cir. 1983), *citing United States v. Dinitz,* 538 F.2d 1214 (5th Cir. 1976), *cert. denied*, 429 U.S. 1104, 97 S. Ct. 1133, 51 L. Ed. 2d 556 (1977).

---

violates due process; (3) circumvents the mandatory disqualification provisions of 28 U.S.C. § 455(b); (4) violates the separation of powers doctrine; and, (5) violates the Thirteenth Amendment's prohibition against slavery and involuntary servitude if the court adopts the position advocated by the plaintiffs. (Defendant's Supplemental Memorandum of Law In Support Of Its Motion To Substitute Counsel, pp. 1-13).

The court in *McCuin* stated:

> The right to counsel of one's choice may be overridden when 'compelling reasons exist.' The right should be balanced in cases in which it is challenged against the right to 'untainted prosecution of the lawsuit' and society's need to maintain the highest ethical standards of professional responsibility. It cannot be exercised without thought also to the needs of effective administration of justice.

*McCuin*, 714 F.2d at 1263 (footnotes omitted).   In examining the need for effective administration of justice in civil cases, the court further stated:

> If a party who is offended by a judge's ruling could disqualify the judge by employing new counsel after the case had been pending before that judge for years, he could force on other litigants and the courts the penalty of starting over before a new judge. Both effective judicial administration and economy of litigation costs require that a case be assigned as soon as possible after it is filed to a single judge who will become fully familiar with the issues and exercise effective control over the pleadings, discovery, pretrial, and trial. . . . If, after seeing who the judge is or weighing his rulings for a period of years, a litigant could in effect veto the allotment and obtain a new judge by the simple expedient of finding one of the judge's relatives who is willing to act as counsel, it would become possible for any party to disrupt preparation for, or, indeed, the trial itself.

*Id.* at 1263-64 (footnote omitted).   The Eleventh Circuit Court of Appeals has long adhered to the rule that "district judges 'enjoy broad discretion to determine who shall practice before them and to monitor the conduct of those who do.'" *Boeing*, 79 F.3d at 1055, *citing Dinitz*, 538 F.2d at 1219.

The court concludes that although the right to counsel is fundamental, it is but one factor that must be considered in determining whether the motion to substitute counsel should be allowed in this case. However, "a showing of overriding need, rather

than just convenience, a need that would reflect upon the litigant's ability to have its case fairly presented, rising to constitutional due process concerns, would trump" other considerations. *Boeing*, 79 F.3d at 1056.

The record is clear that Circuit City has made a significant effort in determining which counsel meets its requirements and satisfies its needs. Even so, the court does not and can not find that Circuit City's desire to have Lehr Middlebrooks represent their interests in this litigation is an absolute right under the circumstances. Although Circuit City may have very appropriate, special considerations regarding the counsel they chose, including their legal representative's experience in employment class action lawsuits, their billing practices, the firms' attorney and staff commitment, and their willingness to interact with Circuit City's in-house employment counsel(*See* doct. 36, ¶15; doct. 29, pp. 46-47), the court is convinced those needs can be met by other firms in Birmingham or the surrounding areas. *See Boeing*, 79 F.3d at 1055, *quoting* Judge Propst. In sum, there is no overriding need of constitutional proportions to "trump" the determination that the motion should be denied. In so deciding, this court is not discounting the testimony of Ms. Parsons concerning Circuit City's efforts to obtain counsel of its choice. Rather, the court, after considerable evaluation and deliberation, has determined that Lehr Middlebrooks is not the only Birmingham firm capable of meeting Circuit City's needs.

11

## B. The Court's Resources

Three of the enumerated considerations deal with matters directly implicating the court's resources: the court's docket; the delay in reaching a decision; and the judicial time invested. Concerning resources, the Eleventh Circuit Court of Appeals in *Boeing* stated:

> Judicial resources in this country are limited. It is incumbent on lawyers as officers of the court, as well as judges, to guard against actions and procedures to avoid the useless expenditure of judicial time. Although time alone would not necessarily reflect judicial attention, and consideration should be given to how much judicial work has actually been invested in a case, that evaluation is appropriately within the province of the trial judges. Not only is it the time a judge might have spent on rulings on the case, but the condition of crowded dockets and priorities on other judges' calendars. These are matters known to local judges and do not lend themselves to specific findings.

*Boeing,* 79 F.3d at 1055.

The last sentence is particularly significant. Evaluating the dockets of the various judges and their priorities is difficult at best. However, a number of facts are evident in this District. First, for the last two years, the court has been operating with five active district judges rather than the seven allocated. Second, Chief United States District Judge Sam C. Pointer, Jr., has been assigned a multi-district litigation matter involving in excess of twenty thousand plaintiffs while maintaining his regular caseload. Third, the caseload of each of the judges of this Court is substantial. These facts militate against granting the motion to substitute counsel.

12

When evaluating the factor concerning possible delay in reaching a decision, two facts stand out. First, due consideration of this motion has required the expenditure of limited judicial resources which delays the district judge's ability to reach a decision on the merits of the plaintiffs' claims. By way of example, disposition of the present motions consumed seven weeks. This was done as expeditiously as possible without compromising the rights of the parties. Had discovery been necessary, it is reasonable to assume that three to four additional months would have been consumed prior to a decision.[4] If there is an appeal of this court's determination to a district judge and ultimately to the Eleventh Circuit Court of Appeals, another six months to a year may be spent.

Second, reassignment of the case to a new judge will result in some delay depending on the priorities and demands already placed on the recipient judge. Although the amount of delay is not possible to quantify, there will most certainly be a delay while the court reviews the matter so as to be prepared to address the merits.

Evaluating the factor dealing with judicial time invested is not as easily determined as Circuit City suggests in its memorandum in support of its motion to substitute counsel which states that:

> [t]he judicial time invested has been minimal. To date, the Court has entered only a Stipulated Protective order, and granted unopposed motions for extensions of time. The Court conducted one hearing for about an

---

[4] The court notes that neither party disputed this estimated time frame at the November 16, 1998, hearing in this matter.

13

hour in March, but no ruling has issued.

(Defendant's Memorandum, p. 16). What counsel fails to consider is the judge's time preparing for the hearing on defendant's motion to stay the proceedings and to compel arbitration and any consideration given the matter subsequent to the hearing and the filing of the present motion to substitute counsel.

Circuit City further suggests that neither the time delay nor prior judicial activity are significant factors in this matter. For example, counsel for Circuit City state in their reply to the plaintiffs' proposed discovery plan:

> There can be no argument that merely because of the passage of time a change in judge is destructive of the interest of justice or that it has substantive impact worthy of note. Indeed, if that were the case, the Northern District of Alabama would not be distributing "old" cases to the two new judges recently appointed to the bench. Consider the recent reassignment of *Linda Hersey v. American Red Cross*, Case No. CV-96-P-1422-S, a case which was filed over two years ago.

(Defendant's Reply to Plaintiffs' Proposed Discovery Plan, doct. 31, p. 3). Although it is true that some older cases have been reassigned to the newly appointed district judges, the considerations applicable in such reassignments are not identical to those in reassignments due to a judge's forced recusal. Reassignments are inevitable when new judges come on the bench and the court has an opportunity to pick and choose such cases based upon its needs and upon the overall efficiency of the court when such reassignments are anticipated. The court has no such opportunity of choice when a reassignment is forced upon it when a judge is disqualified. The court also notes that the

14

*Hersey* case, which is cited by the defendant, is a poor example, as it was reassigned from Judge Pointer, who has the largest number of pending cases, including the multi-district litigation, to one of the new judges.

When these three factors are considered, the court concludes that they weigh in favor of denying the motion to substitute counsel.

### C. The Injury and Expense to the Plaintiffs

Two considerations relate directly to the plaintiffs in this matter: the injury to the plaintiff should the motion be granted and the expense to the objecting party. The Eleventh Circuit Court of Appeals provided no specific guidance on how to weigh either of these considerations. *Boeing*, 79 F.3d at 1055. Circuit City contends that there will be no injury to the plaintiffs and the expense to the parties objecting to the motion (the plaintiffs) is minimal.

Counsel for the plaintiffs retort that it would be unfair to allow the substitution because it "will result in disruption of the plaintiffs' case strategy, possible prejudice to individual class members, many of whom have been piggybacking on the Title VII charge of one individual. . . ." (Plaintiffs' Memorandum in Support of their Opposition, p. 4). In a footnote, plaintiffs state, "Under such circumstances, many class members would be left with the *Hobson's* choice of staying in a class case before a hostile judge or opting out to file an individual action, but without the ability to file Title VII claims because the statute of limitations had run." (Plaintiffs' Memorandum, p. 4, n.1). This court is

15

unwilling to accept and adopt this reasoning as evidence of injury since it is premised on the erroneous assumption that another judge would be unfair or even "hostile." However, the court does note, as did Judge Propst in the *Boeing* case, that the fact that the case has been pending for a considerable period "militates against granting [the motion] in the absence of an overriding need for a particular lawyer." *Boeing*, 79 F.3d at 1055.

Concerning expense to the objecting party, defendant states that "[t]he plaintiff immediately filed a three-page opposition to the motion without awaiting this memorandum in support. There is no need for the plaintiffs to incur any additional expense by virtue of the case being reassigned to another judge of this Court." (Defendant's Memorandum of Law in Support of Its Motion to Substitute Counsel, p. 16). Circuit City would be correct if the plaintiffs wanted to acquiesce in the motion. It is clear, however, that they do not intend to do so. As a consequence, the plaintiffs have had to expend substantial resources and time to respond to Circuit City's motion. They have had to file a response in opposition to the defendant's motion, a twenty-page memorandum in support of their opposition to the motion, a motion to reschedule the hearing, and a submission of legal authorities on the constitutionality of the court's standing order. They have also had to prepare a proposed discovery plan and witness list which includes a lengthy affidavit from local counsel. When defense counsel objected to the affidavit offered in support of the discovery plan and moved to strike the

16

affidavit, the plaintiffs filed a four-page response in opposition to the motion to strike. Additionally, the plaintiffs have incurred, and will continue to incur, expenses at the evidentiary hearings on the matter.  Should Circuit City decide to seek further review of this decision, additional and substantial expenses will continue to be incurred by the plaintiffs.  In sum, what is evident is that the plaintiffs have expended significant time and resources in opposing the defendant's motion.  The longer this matter is litigated, the greater the expense to the plaintiffs.

Even disregarding the expenses of opposing the motion to substitute or appealing this court's decision, the plaintiffs could incur some expenses by virtue of a reassignment.  For example, the new judge may require additional briefs or arguments on the arbitration issue.  Defendant notes this possibility in the affidavit of David Middlebrooks, but attributes  the possibility of such to the "rapid development of the law in this area." (Doct. 40, Middlebrooks affidavit, p.5).

### D.  The Potential for Manipulation and Impropriety

The last consideration listed in *Boeing,* the potential for manipulation and impropriety, is significant in the pending matter.  In *Boeing*, the court stated:

> The deciding judge was obviously concerned, as are other judges of that district, about the possibility that in this district the choice of lawyers may sometimes be motivated by a desire to disqualify the trial judge to whom the case has been randomly assigned. . . .  This potential for manipulation or impropriety may be considered, without making specific findings, a difficulty the deciding judge reflected upon in his opinion.

*Id.* at 1055-56.  This factor and a party's constitutional right to counsel may involve

17

competing interests.  The litigant is seeking to protect its choice of a representative and the court is seeking to maintain the integrity of the judicial process.  The court in *McCuin* stated: "The general rule of law is clear: a lawyer may not enter a case for the primary purpose of forcing the presiding judge's recusal."  *McCuin,* 714 F.2d at 1265.  Though easily stated, the application of this rule is difficult.

In reviewing this last consideration, the facts in the present matter are particularly telling.  Ms. Parsons has been Associate General Counsel for Circuit City, a large national corporation, for over three years.  (Doct. 29, p. 36).  She is responsible for employment law matters with the company.  (*Id.*).  When Ms. Parsons chose to use Lehr Middlebrooks, she had certain information that would lead her to consider Judge Clemon's disqualification in making that choice.  She had been told by at least two lawyers that, in their opinion, Judge Clemon was a "plaintiff-sympathetic judge" and "that it was always difficult [for a defendant] to appear in front of" him.  (Doct. 29, p. 64).  One other attorney communicated his perception that drawing Judge Clemon was not "particularly good news."  (*Id.*, p. 63).  She stated that she had discussions concerning Judge Clemon with each of the attorneys that were interviewed.  (*Id.*, p. 58).  Further, the Lehr Middlebrooks representatives told her of the relationship between Judge Clemon and Terry Price.  They discussed it at the September 28, 1998 meeting and they provided her with copies of the court's standing order and the *Boeing* case.

Ms. Parsons impressed the court during her testimony in the hearing on this

18

matter. She strikes the court as being very intelligent, deliberate, and the type of person who does not make a decision without considering all the ramifications.

Under the facts and circumstances before the court, the potential for manipulation and impropriety is great. Counsel for Circuit City was clearly aware or should have been aware of the consequences presented by the prospect of hiring the Lehr Middlebrooks firm after their meeting. As an attorney facing such a sensitive issue, she is chargeable with knowing the law, including that disqualification would be mandated. She read the standing order of this court before choosing Lehr Middlebrooks. This indisputably put her on alert that the disqualification issue would be important. Yet, according to her testimony, she failed to give the issue any serious scrutiny at that time. In fact, she made her decision without even bothering to read her copy of the *Boeing* case that Lehr Middlebrooks had given her. This court cannot fathom that, under these circumstances, the disqualification of Judge Clemon was not a variable in Ms. Parsons' mind. This is not intended as an indictment of wrong doing by Ms. Parsons, but is a recognition of the practical reality evidenced by the facts and circumstances presented.[5]

## IV. UTILIZATION OF LEHR MIDDLEBROOKS

Immediately before the second hearing on Circuit City's motion to substitute counsel, the defendant filed an affidavit of David Middlebrooks and a second affidavit

---

[5] The court finds no fault on the part of the Lehr Middlebrooks firm or Terry Price in their handling of this issue. To the contrary, the record reveals that they actively and properly informed the client and its in-house counsel of the issue and potential consequences. From all appearances, they have filed and argued their motion to substitute counsel in good faith and for no improper purpose whatsoever.

of Ms. Parsons.  In Parsons' second affidavit, she states:

> Even if Circuit City's counsel of choice is not permitted to appear in this
> case, Circuit City will continue to utilize the firm of Lehr Middlebrooks
> Price & Proctor, P.C., to assist it in the preparation of this case.  It is also
> my intention to give the firm the opportunity to perform other
> employment-related legal work for Circuit City in the area as it may come
> up.

(Doct. 40, Parsons Affidavit, p. 1).  In view of the court's determination that the motion

for leave to substitute counsel is due to be denied and Circuit City's recent assertion that

it will continue to utilize the Lehr Middlebrooks firm in the preparation of this case, it

is now necessary for the court to determine what role, if any, the Lehr Middlebrooks

firm is permitted to undertake in this case.

As already noted, section 455(b)(5) requires recusal of a judge if a relative within

the third degree "[i]s known by the judge to have an interest that could be substantially

affected by the outcome of the proceeding."  28 U.S.C. § 455(b)(5)(iii).  Additionally,

section 455(a) requires the disqualification of the judge "in any proceeding in which his

impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

> The standard under § 455(a) is an objective one, focusing on a
> hypothetical reasonable observer.  The test of whether to recuse is one of
> objective reasonableness, that is, whether 'an objective, disinterested, lay
> observer fully informed of the facts underlying the grounds on which
> recusal was sought would entertain a significant doubt about the judge's
> impartiality'. . . . A judge is under an 'affirmative, self-enforcing obligation
> to recuse himself *sua sponte* whenever the proper grounds exist,' and is
> required to resolve any doubts in favor of disqualification.

*United States v. Cerceda*, 139 F.3d 847, 852-53 (11ᵗʰ Cir. 1998)(citations omitted).  *See*

20

*also Liteky v. United States,* 510 U.S. 540, 548, 114 S. Ct. 1147, 1153, 127 L. Ed. 2d 474,

486 (1994)("Quite simply and quite universally, recusal was required [under subsection

(a)] whenever 'impartiality might reasonably be questioned.'"); *Liljeberg v. Health Services*

*Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855(1988)(A judge must

recuse himself under § 455(a) in any proceeding where his impartiality might reasonably

be questioned even if he did not know of the circumstances requiring disqualification).

Because of the particular facts and circumstances in the present matter as

discussed above, the determination of the court to deny Circuit City's motion to

substitute counsel necessarily precludes Lehr Middlebrooks from servicing Circuit City

in the fashion stated in Ms. Parsons affidavit. To find otherwise would undercut the

clear intent of section 455. By so finding, this court is not prescribing Circuit City's use

of the Lehr Middlebrooks firm for "other employment-related legal work . . . in the area

as it may come up." (Doct. 40, Parsons Affidavit, p. 1). This holding only precludes

Circuit City from employing Lehr Middlebrooks with respect to this particular action.

## V. CONCLUSION

Having considered the *Boeing* factors in view of the testimony, evidence, and

arguments of counsel, the court concludes that the Motion for Leave to Substitute

Counsel (doct. 23) is due to be denied. Consistent with the agreement of the parties,

Lightfoot Franklin's Motion to Withdraw (doct. 26) is due to be granted.[6]   David

---

[6] During a break in the October 20, 1998, hearing, the parties agreed to allow Jere White and the Lightfoot Franklin firm withdraw from the representation of Circuit City and if the court disallowed the requested substitution

21

Middlebrooks' Motion to Join Motion for Leave to Substitute Counsel (doct. 27) is granted so as to allow joinder in the motion and denied to the extent the motion requests leave of court to substitute counsel. Defendant's "Motion to Strike Affidavit Filed in Support of Plaintiff's Proposed Discovery Plan" (doct. 32) is moot. An order consistent with the findings reflected in this memorandum opinion will be entered contemporaneously herewith.

If any party believes the memorandum opinion and order are clearly erroneous or contrary to law, reconsideration of the same by a district judge is allowable pursuant to 28 U.S.C. § 636(b)(1)(A).

The Clerk is directed to serve a copy of this memorandum opinion upon counsel for the parties and Terry Price, Brent L. Crumpton, and David J. Middlebrooks.

DONE this the 23rd day of November, 1998.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE

---

of counsel by Lehr Middlebrooks, Circuit City would be afforded thirty days in which to substitute counsel. Premised on the representations of counsel, the court granted the motion. (Doct. 29, pp. 30-31).

22