~FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Southern Division

00 FEB -9 PM 4: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB ›9 2000

REGINALD WRIGHT, RUTH BURDEN,      )
MARK KERCE, DONALD OPIE, FRANK     )
BARMORE and ANGELA WHITTER,        )
on behalf of themselves and all others )
similarly situated,                )
                                   )
                 Plaintiffs,       )
                                   )
v.                                 )          CV-97-P-0776-S
                                   )
CIRCUIT CITY STORES, INC.,         )
                                   )
                 Defendant.        )

## Opinion

Before the Court is a Motion to Stay Proceedings and Compel Arbitration filed by Defendant Circuit City Stores on October 27, 1997. For the reasons expressed below, the Motion is due to be granted.

### I. Facts

Plaintiff Frank Barmore, a black male, began his employment with Circuit City as a sales counselor on March 28, 1988. Plaintiff Ruth Burden, a black female, was hired by Circuit City as a cashier on July 31, 1990. In March of 1995, Circuit City adopted an alternative dispute resolution program known as the "Associate Issue Resolution Program." This program provides a process, including final and binding arbitration, through which applicants, employees, and former employees of Circuit City (all described as "Associates") may resolve employment-related disputes. In the spring of 1995, Circuit City implemented the program through meetings at all store locations, including those in which Burden and Barmore worked. At the meetings, in addition to viewing a video presentation explaining the arbitration program, each employee received the comprehensive written materials contained in the "Associate Issue Resolution Package."

Circuit City did not impose the arbitration program upon all then-current employees as a condition of continued employment. Rather, associates who were employed by Circuit City at the time of the implementation of the program, including Burden and Barmore, were given the option of whether or not to participate. Associates who did not wish to participate were allowed to opt-out through the completion and mailing of an "Arbitration Opt-Out Form" within 30 days of their receipt of the package. This process was explained at the meetings and in the written materials contained in the package. As the materials made clear, those employees who received the package and elected not to opt-out of the program were agreeing to be bound by its provisions requiring final and binding

67

arbitration of all employment-related claims. Neither Burden nor Barmore submitted an opt-out form to Circuit City within 30 days of their receipt of the package.

The Circuit City "Dispute Resolution Rules and Procedures," provided to Burden and Barmore as part of the package, clearly identify those claims which are subject to arbitration. Among the covered claims are those arising under "Title VII of the Civil Rights Act of 1964, as amended, including amendments of the Civil Rights Act of 1991" and claims arising under 42 U.S.C. § 1981. On July 29, 1997, Plaintiffs Burden and Barmore joined in this class action against Defendant Circuit City. In this lawsuit, brought pursuant to 42 U.S.C. § 1981, Burden and Barmore each claim to have been subjected to employment discrimination based on their race during their employment with Circuit City. On October 27, 1997, Circuit City filed a Motion to Stay Proceedings and Compel Arbitration with respect to the claims of Burden and Barmore. On November 23, 1999, the case was reassigned to this court. Defendant's motion was taken under submission on January 20, 2000.

## II. Discussion

In opposition to Defendant's Motion to Stay Proceedings and Compel Arbitration, Plaintiffs make the following arguments in support of their contention that Circuit City's arbitration agreement is unlawful and unenforceable: (1) the recent Supreme Court decision of *Kimel v. Florida Bd. of Regents* calls into question the arbitrability of Plaintiffs' claims; (2) the Federal Arbitration Act does not apply because the arbitration agreement was an employment contract, and the Plaintiffs are engaged in interstate commerce; (3) the arbitration agreement is void under ordinary contract principles for lack of consideration, lack of mutuality of obligation, and lack of an affirmative acceptance of Circuit City's offer; and (4) the agreement defeats the remedial functions of Section 1981, thereby denying Plaintiffs the opportunity to effectively vindicate their statutory rights.

A.   Arbitrability of Employment Discrimination Claims

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the United States Supreme Court addressed the arbitrability of federal statutory employment claims. In that case, the Supreme Court unequivocally ratified existing judicial support for arbitration of employment discrimination matters and held that a claim arising under the Age Discrimination in Employment Act can be subjected to compulsory arbitration pursuant to a written arbitration agreement. Subsequent to the *Gilmer* decision, the Eleventh Circuit and other United States Courts of Appeals have acknowledged the strong federal policy favoring arbitration and the corresponding presumption in favor of the validity of agreements requiring arbitration of employment claims. Specifically, in *Bender v. AG Edwards & Sons, Inc.*, 971 F.2d 698 (11ᵗʰ Cir. 1992), the Eleventh Circuit upheld the validity of an agreement to arbitrate employment-related disputes involving Title VII sexual harassment claims. In so holding, the Court found *Gilmer's* reasoning to be dispositive of agreements to arbitrate all employment discrimination claims, not just those arising under the ADEA. *Bender*, 971 F.2d at 700 ("We see no reason to distinguish between ADEA claims and Title VII claims").

While acknowledging the controlling nature of the *Bender* holding, Burden and Barmore

2

argue that recent developments in the law call into question the reasoning behind the *Bender* decision or, at least, limit the application of its holding. In support of their argument, Plaintiffs cite the recent Supreme Court case of *Kimel v. Florida Board of Regents*, 120 S. Ct. 631 (2000), in which the Court drew a basic distinction between those discrimination cases based upon age and those based upon race or gender. The *Kimel* Court's holding that the ADEA's attempt to abrogate states' Eleventh Amendment immunity exceeded Congress' authority under the enforcement clause of the Fourteenth Amendment suggests that Title VII and Section 1981, to the extent that they involve discrimination based upon "suspect" classifications such as race or gender, stand on more fundamental Constitutional footing than the ADEA. *Kimel*, 120 S. Ct. at 645. However, despite the distinction drawn between apparent claims brought under Section 1981 or Title VII and the ADEA, nothing in the *Kimel* decision suggests that compulsory arbitration pursuant to a written arbitration agreement is inconsistent with the underlying purposes of Title VII or Section 1981. Furthermore, the text of The Civil Rights Act of 1991 explicitly encourages the use of alternative dispute resolution, including arbitration, where appropriate. Pub. L. 102-166, § 118. In light of the text of this statute, the strong federal policy favoring arbitration, and the Eleventh Circuit's binding precedent in *Bender v. AG Edwards & Sons, Inc.*, this court finds no reason why Plaintiff's § 1981 claims in this case should not be subjected to arbitration pursuant to Circuit City's arbitration agreement.

B.     Applicability of the Federal Arbitration Act to Plaintiff's Claims

Originally enacted in 1925, the purpose of the FAA was to reverse the longstanding judicial hostility toward arbitration agreements and to place them upon equal footing with other contracts. *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 24 (1991). In furtherance of this objective, Section 2 of the FAA establishes the validity of any written provision for arbitration in any contract evidencing a transaction involving commerce. The FAA also provides for stays of proceedings when issues in the proceeding are referable to arbitration (Section 3) and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement (Section 4). As the Supreme Court has repeatedly recognized, these provisions manifest a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).

In the present case, Plaintiffs contend that the FAA's enforcement provisions and the federal policy favoring arbitration agreements are not applicable to them, arguing that they "are not covered by the Federal Arbitration Act because they are employees engaged in interstate commerce." Section 1 of the Act provides, in pertinent part, that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (1994). While the Supreme Court has not decided the proper scope of the §1 exclusion, the majority of the circuits that have addressed the issue have concluded that it should be read narrowly to apply only to contracts of employment of those workers actually engaged in the movement of goods in interstate or foreign commerce. *See, e.g., Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1470 (D.C. Cir. 1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 598 (6th Cir. 1995); *Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir. 1971); *Pietro Scalzitti Co. v. International Union*

3

*of Operating Eng'rs*, 351 F.2d 576, 579-80 (7th Cir. 1965).  In *Paladino v. Avnet Computer Technologies, Inc.*, the Eleventh Circuit joined the majority of the Circuits which have adopted this narrow construction.  134 F.3d 1054, 1060-61 (11th Cir. 1998).

Following this narrow construction of Section 1, neither Plaintiff falls within the exclusion because neither was directly involved in the actual transportation of goods in interstate commerce.[1] While both Burden and Barmore testified that they sometimes ordered merchandise from out-of-state Circuit City stores and had items shipped from these stores, this activity does not rise to the level contemplated by the drafters of Section 1 of the FAA.  As the Sixth Circuit has made clear, excluded workers are those "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are."  *Asplundh Tree Expert Co v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995).  Had Congress intended Section 1's exclusion to apply generally to contracts of employment, it could have done so without the specific enumeration of "seamen and railroad employees."  *See Kelly v. UHC Management Company, Inc.*, 967 F. Supp. 1240, 1251 (N.D. Ala. May 12, 1997).  Therefore, the court concludes that the contracts at issue are not excluded from the provisions of the FAA.

C.     The Validity of the Agreement as a Matter of Contract

Where the Federal Arbitration Act applies, the district court determines whether a valid agreement to arbitrate exists.  *Prima Paint Corp. v. Flood & Conklin*, 388 U.S. 395 (1967).  Judicial determinations on the validity of an agreement to arbitrate are to be decided as a matter of contract. *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986). Federal courts should make these decisions by looking to the state-law governing formation of contracts.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Therefore, in the present case, the court looks to the contract law of Alabama, where both Plaintiffs were employed by Circuit City, in reviewing the agreement to arbitrate.  It is a basic principle of Alabama contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise.  *See Consolidated Portrait & Frame Co. v. Barnett*, 51 So. 936 (Ala. 1910).  For consideration to exist, there must be an act, forbearance, detriment, destruction of legal right, or returned promise bargained for and given in exchange for the promise.  *Kelsoe v. International Wood Products*, 588 So. 2d 877 (Ala. 1991).

In the present case, Plaintiffs contest the validity of the arbitration agreement on the grounds that the contract lacks consideration and mutuality of obligation.  In support of their argument, Plaintiffs rely on the Eleventh Circuit opinion of *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir. 1985).  In *Hull*, the Eleventh Circuit held that the "consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some class of claims."  705 F.2d at 1550.  In applying this principle, the *Hull* Court found that an agreement which required an employee to submit all claims arising out of or relating to the employment agreement to arbitration,

---

[1]Even assuming that their duties entitled them to the exclusion, there has been no showing that the contract in question was a "contract of employment."

4

but allowed the employer a unilateral right to a judicial forum "in the event of the breach by [the employee] of the terms and conditions" of the agreement was unenforceable because it was not "mutually binding." *Id.* at 1549-50. The Court based this decision on the fact that the latter provision made the employer's obligation to arbitrate claims illusory, no matter who brought the claims. *Id.* at 1549.

Unlike the parties in *Hull,* in the present case both Circuit City and the Plaintiffs are fully bound to arbitrate any employment-related disputes raised by the associate, to comply with the same procedures, and to be bound by the results. Nevertheless, Plaintiffs contend that *Hull* mandates a finding that consideration was inadequate due to the fact that Circuit City did not agree to arbitrate any claims that it might have against the Plaintiffs, as the agreement limited the arbitrator's authority to deciding "case[s] submitted by the Associate[s]...." However, The fact that Circuit City may not be bound by the agreement to submit to arbitration all potential claims that it has against employees is of little consequence. Circuit City's promise to be bound by the arbitration process and results of employee disputes that are initiated by employees is sufficient consideration in this case. *See Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 378 (4th Cir. 1998); *Michalski v. Circuit City Stores,* 177 F.3d 634, 636 (7th Cir. 1999)(both holding that similar or identical agreements were supported by adequate consideration). It is clear that the contract to arbitrate proffered by Circuit City requires that both the employer and the employee will be bound by the arbitration process on claims raised by the associate. Undoubtedly, Circuit City has agreed to be bound to arbitrate at least a specified class of claims: those brought by associates. *See Huck,* 750 F.2d at 1550.[2] No consideration above and beyond the agreement to be bound by this process was necessary to validate the contract.

Plaintiffs also argue that arbitration should not be compelled in this case because they have not affirmatively agreed to the contract which requires that the parties arbitrate. In support of their position, Plaintiffs seemingly argue that the arbitration agreement in this case could not have been voluntary because employers generally derive more benefit from an obligation to arbitrate than do employees. However, "mutuality in a contract does not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract." *Marcrum v. Embry,* 282 So. 2d 49, 51 (Ala. 1973). As long as there are binding promises by each party to the other, there is adequate consideration for a valid contract. *Id.* As noted, Circuit City's promise to be bound by the arbitration process itself serves as mutual consideration in this case. Plaintiffs also argue that the agreement was not voluntary because Circuit City designed its policy documents to create a situation where an employee's silence would create an "assumption equivalent to acceptance." Yet, such a finding of involuntariness is not supported by the evidence. Burden and Barmore both signed a receipt acknowledging that they received the "Associate Issue Resolution Handbook" and also acknowledged seeing a video presentation explaining Circuit City's arbitration program. On the receipt which

---

[2]Even if this court was to accept Plaintiffs argument that *Hull's* holding calls for the invalidation of the arbitration agreement in question, any conclusion that the case might appear to mandate would not necessarily be binding. *See Latifi v. Sousa,* 1996 WL 735260, at *4-5 (N.D. Ala. Dec. 23, 1996)("*Hull's* mutuality requirement, derived from New York law, was not widely accepted. (citations omitted) ... In addition, four years after *Hull* was decided, the New York Court of Appeals overruled the mutuality cases from the lower New York courts and held that '[m]utuality of remedy is not required in arbitration contracts.'").

Plaintiffs signed, they were also provided with instructions regarding a mechanism for opting-out of the program.[3] Both the signed receipt and the handbook advised the Plaintiffs that they were automatically part of the arbitration program unless they followed the specified opt-out procedures. By choosing not to timely mail in the opt-out form which Circuit City provided them, the Plaintiffs voluntarily agreed to arbitrate any employment-related claims that they might have against Circuit City.

D.      Ability of Employees to Vindicate their Statutory Rights under the Arbitration Agreement

        While federal statutory claims are generally subject to arbitration, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)(quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). When an arbitration clause has provisions that defeat the remedial and deterrent functions of a statute, the prospective litigant cannot effectively vindicate [his or her] statutory rights, thereby making the arbitration clause unenforceable. *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998). As such, the arbitrability of statutory claims "rests on the assumption that the arbitration clause permits relief equivalent to court remedies." *Paladino*, 134 F.3d at 1062.

        Plaintiffs claim that the Circuit City arbitration agreement deprives them of a meaningful ability to vindicate their rights due to the high cost of arbitration. In support of their position, Plaintiffs rely on the case of *Randolph v. Green Tree Financial Corp. – Alabama*, 178 F.3d 1149, 1158 (11th Cir. 1999), in which the Eleventh Circuit recently held an arbitration clause to be unenforceable because the clause failed to "provide the minimum guarantees required to ensure that [the plaintiff's] ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration." In reaching this conclusion, the Court found that the clause at issue defeated the remedial purposes of the Truth in Lending Act because the clause said

---

        [3]The "Associate Receipt of Issue Resolution Package Form" signed by Plaintiffs contained the following statement:

> 'I understand that participation in the Issue Resolution Program is voluntary. If I do not wish to participate in the arbitration component of the program, however, I must send a completed 'Circuit City Arbitration Opt-Out' form which is included with this package, to:
>
> Circuit City Stores, Inc.
> Arbitration Coordinator
> 9960 Mayland Drive
> Richmond, Virginia 23233
>
> I must send the Opt-Out form via U.S. Mail (do not use intercompany mail) to the above address within 30 calendar days of the date on which I signed below. I understand that if I do not mail the form within 30 calendar days, I will be required to arbitrate all employment-related legal disputes I may have with Circuit City."

nothing about the payment of filing fees, the apportionment of the costs of arbitration, or whether the rules of the American Arbitration Association were applicable. *Randolph*, 178 F.3d at 1158. Thus, the Court was given no real assurance that the plaintiff would not be "saddled with a prohibitive cost order." *Id.* The *Randolph* court found support for its decision from a finding by the *Paladino* court that forcing a plaintiff to bear half the "hefty" cost of arbitration and "pay steep filing fees" constitutes a "legitimate basis for a conclusion that the clause does not comport with statutory policy." *Paladino,* 134 F.3d at 1062.

Unlike the arbitration clauses in *Randolph* and *Paladino*, the Circuit City arbitration clause does provide assurances that the Plaintiffs in this case will not be stuck with prohibitive cost orders. An employee asserting a claim in arbitration against Circuit City is required to pay only a $75.00 filing fee to initiate the proceedings, half the $150.00 filing fee presently required to initiate a civil action in the United States District Court. *Compare Paladino,* 134 F.3d at 1062 (finding a $2000 filing fee to be excessive). Circuit City advances the remaining costs of arbitration. While Rule 13(a)(2) of the arbitration agreement provides that each party shall pay one-half the costs of arbitration following the issuance of the award, Rule 13(a)(3) provides that if the associate prevails in arbitration, the filing fee shall be refunded, and the arbitrator may require that Circuit City pay all costs. Even in the event that an associate is required to pay costs, the agreement lessens the possibility that he or she will be "saddled with a prohibitive cost order" through a provision which provides that associates who pay or make arrangements to pay their portion of the costs within 90 days after issuance of the award will, at the most, only be liable for costs and fees equal to three percent of the associate's most recent annual compensation at Circuit City. Furthermore, the agreement provides that the arbitrator is given the discretionary authority to award attorney's fees to a prevailing associate. Conversely, an associate will not be forced to pay Circuit City's attorney's fees under the agreement, absent a finding by the arbitrator that the associate's claim was frivolous or presented in bad faith. The above provisions indicate that complainants subject to the Circuit City arbitration agreement are not barred from vindicating their statutory rights by the cost provisions in the agreement. "The purpose of the Federal Arbitration Act was to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House Ltd. v. Meyer,* 664 F.2d 1176, 1179 (11th Cir. 1981). This court finds that the cost and fee provisions of Circuit City's arbitration agreement comport with both the remedial purposes of Section 1981 and the underlying purposes of the Federal Arbitration Act itself.

Plaintiffs also challenge the arbitration agreement on grounds that they are deprived of a meaningful opportunity to vindicate their statutory rights due to the fact that the terms of the arbitration agreement do not permit the same relief which would be available to them in a judicial forum. Essentially, Plaintiffs contend that the limitations on remedies contained in the arbitration agreement undermine Section 1981's "remedial and deterrent function[s]." *See Gilmer,* 500 U.S. at 28. While the limitations imposed by the arbitration agreement are somewhat minimal, Plaintiffs are correct that the agreement does not entitle them to the same potential recovery as Section 1981. Specifically, Circuit City's agreement provides for full back pay, "but only up to one year from the point at which the Associate knew or should have known of the events giving rise to the alleged violation of law...." Furthermore, the Circuit City agreement limits front pay awards to 24 months

and limits punitive damages to the greater of the monetary awards rendered for back pay and/or front pay or $5000. In contrast, Section 1981 allows for back pay for an unlimited period of time (subject only to statutes of limitation) as well as punitive damages without statutory limitation. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975); 42 U.S.C. § 1981A(b)(4). The Eleventh Circuit has also upheld front pay awards in Title VII cases for periods of close to ten years. *See, e.g., Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1364 (11th Cir. 1994). Because punitive damages and back/front pay are important deterrents to employers who might otherwise discriminate on the basis of race, the failure of the Circuit City arbitration provision to provide remedies equivalent to those allowed under Section 1981 prevents the Plaintiffs from effectively vindicating their rights. *See Johnson v. Brooks*, 2000 WL 19166 (4th Cir. Jan. 12, 2000)(affirming decision of the district court that Circuit City's arbitration agreement did not provide the plaintiff with the full set of remedies available under Section 1981 and therefore prevented her from vindicating her rights).

These limitations on remedies under the arbitration agreement, however, do not necessarily preclude enforcement of the agreement in this case. Rule 18 of the Circuit City agreement contained the following provision: "In the event that any of these Dispute Resolution Rules and Procedures agreed upon by the Parties is held to be in conflict with a mandatory provision of applicable law, the conflicting Rule or Procedure shall be modified in accordance with Rule 19 below." In *Paladino v. Avnet Computer Technologies, Inc.*, the Eleventh Circuit addressed the severability of an invalid limitation of remedies provision in an arbitration clause. In that case, the Court held that the presence of an unlawful provision in Avnet's arbitration agreement precluded a "blue penciling" of the agreement because the unlawful provision tainted the entire arbitration agreement, rendering it completely unenforceable. *Paladino*, 134 F.3d at 1058. This conclusion was based on the fact that the arbitration agreement in *Paladino* only authorized an award of damages for breach of contract in any claim arising out of or relating to the plaintiff's employment.[4] Clearly, the arbitration agreement represented an attempt by the employer to force employees to forgo their substantive rights under Title VII, Section 1981 and other federal anti-discrimination statutes. In deciding not to simply strike the invalid limitation of remedies clause found in the *Paladino* arbitration agreement, the Court relied upon well-known principles in contract law which provide that a clause cannot be severed from a contract when it is an integrated part of the contract. *See Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244, 1248 (9th Cir. 1995). More specifically, "severance is inappropriate when the entire provision represents an 'integrated scheme to contravene public policy.'" *Paladino*, 134 F.3d at 1058 (quoting E. Allan Farnsworth, Farnsworth on Contracts § 5.8, at 70 (1990)).

Looking to the terms, nature, and purpose of the Circuit City arbitration agreement, particularly the severability clause, the remedy limitations found in the agreement were not so interdependent with the other parts of the agreement as to make them not severable. Furthermore, the terms of the agreement do not suggest that the entire arbitration agreement represents an attempt by Circuit City to contravene public policy and shackle its employees from vindicating their federally protected rights. The agreement does not prevent employees from recovering any of the types of damages that would be statutorily available, it simply places certain limitations on amounts of

---

[4]There is also no indication that the agreement contained a severability clause.

8

damages that are recoverable. More importantly, the fact that these Plaintiffs were given the opportunity to accept or reject Circuit City's arbitration proposal is evidence of their good faith in devising the arbitration plan. Therefore, as it relates to the claims of the Plaintiffs in this case, it is the opinion of this court that the arbitration clause at issue should be modified in accordance with the severability/conflict of law provision so that it allows for the full range of remedies that the Plaintiffs would be entitled to under Section 1981.[5] Such a resolution comports with the federal policy favoring arbitration, and, at the same time, preserves Plaintiffs' rights to benefit from statutory remedies.

III. Conclusion

For the above reasons, Defendant Circuit City's Motion to Stay Proceedings and Compel Arbitration is due to be granted. The arbitration agreement will be modified in accordance with this opinion, and these proceedings are due to be stayed to the extent that they involve the Section 1981 claims of Plaintiffs Burden and Barmore.

Dated: _____ , 2000

_____
Judge Sam C. Pointer, Jr.

Service List:
    Abigail P. Van Alstyne
    Kell A. Simon
    Robert L. Wiggins, Jr.
    Terry Price
    Stephen A. Brandon
    David J. Middlebrooks
    David E. Nagle

---

[5] The Circuit City agreement also requires that a request for arbitration shall be submitted "not later than one year after the date on which the Associate knew, or through reasonable diligence should have known, of the facts giving rise to the Associate's claim(s)." As there has been no real discovery in this case at this point, it is unclear that Plaintiffs' claims would be affected by this provision. Nonetheless, to the extent that Plaintiffs' ability to vindicate their rights is hindered by this provision, the agreement will be modified so as to make it consistent with Section 1981's two-year statute of limitations. *See Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533, 1545-46 (11th Cir. 1988)(holding that the appropriate statute of limitations for Section 1981 actions is the personal injury statute of the state in which the federal court is sitting); *see also* Alabama Code § 6-2-38 (establishing two year statute of limitations for personal injury actions in Alabama).